UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ESTATE OF YAEL BOTVIN, | : | |
| by and through its Administrator | : | |
| Russell Ellis *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.:   05-0220 (RMU) |
| | : | |
| v. | : | Re Document No.:   22 |
| | : | |
| ISLAMIC REPUBLIC OF IRAN | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

DENYING WITHOUT PREJUDICE THE PLAINTIFFS' RENEWED
MOTION FOR DEFAULT JUDGMENT

**I. INTRODUCTION**

This matter comes before the court on the plaintiffs' renewed motion for default judgment. The plaintiffs have asserted claims of wrongful death, survival and intentional infliction of emotional distress[1] against the Islamic Republic of Iran, the Iranian Ministry of Information and Security and the Iranian Revolutionary Guard ("the defendants"), pursuant to the Foreign Sovereign Immunities Act ("the FSIA"), 28 U.S.C. §§ 1602 *et seq.* On March 27, 2009, the court denied without prejudice the plaintiffs' first motion for default judgment because the plaintiffs had not provided evidence satisfactory to the court regarding their entitlement to a default judgment.

The court concludes that through their renewed motion, the plaintiffs have established the court's subject matter jurisdiction over the plaintiffs' claims, as well as the court's personal

---

[1]   Although the plaintiffs had previously asserted claims for loss of solatium and punitive damages, the plaintiffs do not address those claims in their renewed motion for default judgment. *See generally* Pls.' Renewed Mot. for Default J.

jurisdiction over the defendants. The court is constrained to conclude, however, in light of the Circuit's recent ruling in *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835 (D.C. Cir. 2009), that under the circumstances of this case, Israeli law – rather than California law, which the plaintiffs apply in their renewed motion – governs the plaintiffs' substantive tort claims. Accordingly, the court denies without prejudice the plaintiffs' renewed motion for default judgment, and grants the plaintiffs leave to submit another renewed motion for default judgment demonstrating their entitlement to a judgment in their favor under Israeli law.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiffs' claims stem from an Iranian-sponsored triple-suicide bombing at an Israeli pedestrian mall on September 4, 1997. Compl. ¶ 18. This terrorist attack resulted in the death of fourteen-year-old Yael Botvin, daughter to plaintiff Julie Goldberg-Botvin and sister to plaintiffs Tamar Botvin and Michal Botvin. Mem. Order (Sept. 24, 2007) at 1.

After the plaintiffs filed proof of service and the defendants failed to respond, the Clerk of the Court entered default against the defendants. Entry of Default (July 31, 2006). The plaintiffs then filed a motion asking the court to take judicial notice of findings of fact and conclusions of law made in *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003) (Urbina, J.), which concerned claims brought by victims of the same terrorist incident at issue here. Pls.' Mot. to Take Judicial Notice. On September 24, 2007, the court granted the plaintiffs' request to take judicial notice of the findings of fact and conclusions of law in *Campuzano*, but declined to enter default judgment, noting that the court's findings of fact and conclusions of law in *Campuzano* "suffice[d] to establish the defendants' guilt in perpetrating the attack in question, but . . . [did] not suffice to establish the impact of the attack on the plaintiffs"

in this case. Mem. Order (Sept. 24, 2007) at 2. Accordingly, the court declined to enter default judgment, but permitted the plaintiffs "to file competent written and documentary evidence with the court establishing each element of their particular claims as to both liability and damages." *Id.* at 3.

The plaintiffs then moved for default judgment on March 21, 2008. *See generally* Pls.' Mot. for Default J. The court denied that motion without prejudice because the plaintiffs had failed to provide satisfactory evidence to the court on several matters related to their claims and had failed to demonstrate the applicability of 28 U.S.C. § 1605A.[2] *See generally* Mem. Order (Mar. 27, 2009). For instance, the court determined that the plaintiffs had not established that the victim or any plaintiff was a U.S. national at the time of the attack, as required to establish the court's jurisdiction under the FSIA, that the decedent had survived the terrorist attack for a period of time before her death, as needed to state a survival claim, or that the methodology employed to establish damages was consistent with applicable law. *Id.* at 2-3. The court directed the plaintiffs "to provide further briefing regarding the applicable law in this case under D.C. choice of law provisions and how the facts in this case satisfy each of the elements of the plaintiffs' purported causes of action." *Id.* at 5.

On May 28, 2009, the plaintiffs filed a renewed motion for default judgment. *See generally* Pls.' Renewed Mot. for Default J. ("Pls.' Mot."). The court now turns to an examination of that motion.

---

[2]  In their renewed motion for default judgment, the plaintiffs abandon their claims under 28 U.S.C. § 1605A and move for default judgment under 28 U.S.C. § 1605(a)(7). *See generally* Pls.' Renewed Mot. for Default J. ("Pls.' Mot."); *see also Simon v. Republic of Iraq*, 529 F.3d 1187, 1192 (D.C. Cir. 2008), *rev'd on other grounds sub nom. Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009) (observing that although Congress repealed § 1605(a)(7), courts "retain jurisdiction pursuant to § 1605(a)(7) over cases that were pending under that section when the Congress [repealed it]").

3

### III.  ANALYSIS

#### A.  Legal Standard for a Default Judgment Against a Foreign State

A court shall not enter a default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court."  28 U.S.C. § 1608(e); *see also Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 232 (D.C. Cir. 2003).  This "satisfactory to the court" standard is identical to the standard for entry of default judgments against the United States under Federal Rule of Civil Procedure 55(d).[3]  *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003).  In evaluating the plaintiffs' proof, the court may "accept as true the plaintiff[s'] uncontroverted evidence," *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000), including proof by affidavit, *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13, 19 (D.D.C. 2002).

#### B.  The Court Has Subject Matter Jurisdiction Over the Plaintiffs' Claims and Personal Jurisdiction Over the Defendants

##### 1.  Legal Standard for Subject Matter Jurisdiction Over Cases Concerning State-Sponsored Terrorism

The Antiterrorism and Effective Death Penalty Act of 1996 amended the FSIA and waived the sovereign immunity of state sponsors of terrorism when that state provides "material support" for "an act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking" resulting in personal injury or death.  28 U.S.C. § 1605(a)(7) (2006); *Elahi*, 124 F. Supp. 2d at 107.  When an exception to a country's sovereign immunity exists under § 1605(a)(7), this court has original subject matter jurisdiction over the claim.  28 U.S.C. § 1330(a) (providing for original subject matter jurisdiction over foreign states under the FSIA); *see also Argentine*

---

[3]   Rule 55(d) states that "[a] default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court."  FED. R. CIV. P. 55(d).

4

*Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *Elahi*, 124 F. Supp. 2d at 106.

In a motion for default judgment, the plaintiffs must prove with "evidence satisfactory to the court" the following elements to establish subject matter jurisdiction pursuant to the FSIA:

(1) that personal injury or death resulted from an act of torture, extrajudicial killing, aircraft sabotage or hostage taking;

(2) that the act was either perpetrated by a foreign state directly or by a non-state actor which receives material support or resources from the foreign state defendant;

(3) the act or provision of material support or resources is engaged in by an agent, official or employee of the foreign state while acting within the scope of his or her office, agency or employment;

(4) that the foreign state be designated as a state sponsor of terrorism either at the time the incident complained of occurred or was later so designated as a result of such act;

(5) that if the incident complained of occurred within the foreign state defendant's territory, the plaintiff has offered the defendant a reasonable opportunity to arbitrate the matter;

(6) that either the plaintiff or the victim was a United States national at the time of the incident;

(7) that similar conduct by United States agents, officials or employees within the United States would be actionable.

*See* 28 U.S.C. § 1605(a)(7) (2006); *Elahi*, 124 F. Supp. 2d at 106-07.

## 2. The Court Has Subject Matter Jurisdiction Over the Plaintiffs' Claims

As previously noted, the court has taken judicial notice of its findings of fact and conclusions of law in *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003). *See* Mem. Order (Sept. 24, 2007) at 1-3. In entering default judgment against the defendants, this court in *Campuzano* concluded that the plaintiffs had established the elements of subject matter jurisdiction "by clear and convincing evidence." *Campuzano*, 281 F. Supp. 2d at

269. Given that *Campuzano* concerned the same terrorist act and involved the same defendants, the plaintiffs in this case satisfied all elements of FSIA jurisdiction except the sixth – that either one of the plaintiffs or the victim was a U.S. national at the time of the bombing – by having the court take judicial notice of its findings in *Campuzano*. *See id*. at 269-71.

The plaintiffs have now established that the victim, Yael Botvin, was a U.S. national at the time of the bombing. *See* Pls.' Mot. at 4. Julie Goldberg-Botvin, the mother of Yael Botvin, provided sworn testimony that the decedent was a U.S. citizen on September 4, 1997. Pls.' Mot., Ex. 1 at 21. The plaintiffs have also presented the court with the decedent's birth certificate, which indicates that she was born in California.[4] Pls.' Mot., Ex. 2. Accordingly, the plaintiffs have satisfied the sixth and final element necessary to establish the court's subject matter jurisdiction over the plaintiffs' claims. The court therefore concludes that it has subject matter jurisdiction over the plaintiffs' claims under § 1605(a)(7).

### 3. The Court Has Personal Jurisdiction Over the Defendants

The FSIA provides for personal jurisdiction over a foreign state defendant once the plaintiffs establish an exception to immunity pursuant to 28 U.S.C. § 1605 and accomplish service of process pursuant to 28 U.S.C. § 1608. 28 U.S.C. §§ 1330(b), 1605, 1608; *Foremost-McKesson v. Islamic Republic of Iran*, 905 F.2d 438, 442 (D.C. Cir. 1990) (observing that "[p]ersonal jurisdiction under FSIA exists so long as subject matter jurisdiction exists and service has been properly made pursuant to 28 U.S.C. § 1608"). Because the plaintiffs have established an exception to the defendants' immunity pursuant to § 1605(a)(7) and properly

---

[4]   Furthermore, the plaintiffs have provided the court with the U.S. passports of three of the plaintiffs. Pls.' Mot., Ex. 5; *see also* 28 U.S.C. § 1605(a)(7) (requiring that either the victim or the plaintiff be a U.S. citizen at the time of the incident to give the federal district court subject matter jurisdiction over the claim).

served the defendants pursuant to § 1608,[5] the court has personal jurisdiction over the defendants. *See Foremost-McKesson*, 905 F.2d at 442.

### C. Israeli Law Governs the Plaintiffs' Substantive Claims

Section 1605(a)(7) does not provide a federal cause of action against foreign states.[6] *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 840 (D.C. Cir. 2009). Therefore, a plaintiff is "required to identify, and to bring his claims pursuant to, some other 'cause of action arising out of a specific source of law.'" *Id.* (quoting *Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009)). Claims brought under state statutory and common law, as well as foreign law, may satisfy this burden. *See id.* at 840, 844. To determine which body of law governs the plaintiffs' claims, the court applies the District of Columbia's choice of law rules. *See id.* at 842.

### 1. The District of Columbia's Choice of Law Analysis

District of Columbia courts apply choice of law principles utilizing a "constructive blending" of two distinct analyses: the "governmental interests" analysis and the "most significant relationship" test. *Hercules & Co. v. Shama Rest. Corp.*, 566 A.2d 31, 41 n.18 (D.C. 1989); *accord Oveissi*, 573 F.3d at 842. "Under the governmental interests analysis . . . [a court] must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review." *Oveissi*, 573 F.3d at 842 (quoting *Hercules*, 566 A.2d at 41). In determining which jurisdiction has the most significant relationship to the dispute, D.C. courts consider the

---

[5] Service was properly executed on June 22, 2005. *See* Return of Serv. of Summons and Compl. Executed; Entry of Default (July 31, 2006).

[6] The FSIA, as amended by the National Defense Authorization Act for Fiscal Year 2008, now provides plaintiffs with a federal cause of action against foreign states under 28 U.S.C. § 1605A. *See Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 840, 844 (D.C. Cir. 2009). As previously noted, the plaintiffs have abandoned any claim under § 1605A. *See generally* Pls.' Mot.

four factors articulated in the Restatement (Second) of Conflict of Laws § 145.  *See Hercules*, 566 A.2d at 40; *accord Oveissi*, 573 F.3d at 842.  These factors are:  (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

### 2. Israel Has the Strongest Governmental Interest in and Most Significant Relationship to this Dispute

In their renewed motion for default judgment, the plaintiffs argue that they are entitled to relief under California law because they conclude that the D.C. choice of law rules dictate the application of California law to their claims.  *See* Pls.' Mot. 5-24.  As explained below, the Circuit's recent decision in *Oveissi v. Islamic Republic of Iran* cast significant doubt on that analysis by clarifying the manner in which the district courts are to apply the D.C. choice of law rules to claims under § 1605(a)(7).  *See Oveissi*, 573 F.3d at 842-44.

The plaintiff in *Oveissi* brought claims under the FSIA for wrongful death and intentional infliction of emotional distress ("IIED") after agents of the Iranian government assassinated his grandfather, Gholam Oveissi, in France.  *Id.* at 837.  The plaintiff was a U.S. citizen born in California.  *Id.* at 838.  Several months after the plaintiff's birth, his family moved to France and lived with Gholam Oveissi, who was an Iranian citizen residing in France at the time of his assassination.  *Id*. at 837-38.  Following the assassination, the plaintiff commenced suit against the Republic of Iran and the Iranian Ministry of Information and Security.  *Id.* at 838.

The district court, applying California law, dismissed the plaintiff's claims of wrongful death and IIED.  *Id*. at 838-39.  The Circuit reversed that ruling because it concluded that the district court should have applied French law to the plaintiff's claims.  *Id*. at 844.  The Circuit

noted that the assassination occurred in France, and although the plaintiff was a U.S. citizen, he was domiciled in France at the time of the incident. *Id.* at 842. Thus, the Circuit concluded that because the four Restatement factors "overwhelmingly point[ed] in the direction of applying French law," France had the most significant relationship to the dispute. *Id.* The Circuit also noted that France had "a strong governmental interest in both deterring attacks within its sovereign borders and ensuring compensation for injuries to its domiciliaries." *Id.* By contrast, California's interest, "aris[ing] solely out of the fact that the plaintiff was born and briefly resided there – for less than a year and not at the time of the attack – [was] slight by comparison." *Id.* at 843.

In reaching its holding, the Circuit distinguished *Dammarell v. Islamic Republic of Iran*, 2005 WL 756090 (D.D.C. Mar. 29, 2005), the principal authority on which the district court had relied in deciding to apply California law. *Oveissi*, 573 F.3d at 843. The Circuit noted that in *Dammarell*, the district court had correctly applied "the law of the American plaintiffs' state of domicile[,] rather than that of Lebanon," because "the injuries in that case were 'the result of a state-sponsored terrorist attack on a United States embassy and diplomatic personnel.'" *Id.* (quoting *Dammarell*, 2005 WL 756090, at *20). The Circuit observed that "the United States has a strong interest in applying its domestic law to terrorist attacks on its nationals, especially when, as was the case in *Dammarell*, the attacks are by reason of their nationality." *Id.* (internal quotation marks omitted). In *Oveissi*, however, "there [was] no evidence that Oveissi's assassination was intended to affect the United States." *Id.* In fact, "if any country was the object of the attack, it was France." *Id.* Thus, the Circuit concluded that "all relevant choice-of-

law factors point[ed] to the application of French law to the plaintiff's claims."[7] *Id.*

In determining which body of law governs the plaintiffs' claims in this case, the court considers *Oveissi* highly instructive. Although the decedent in this case was a U.S. citizen, she and the individual plaintiffs were domiciled in Israel at the time of the attack. *See id.* at 842. The suicide bombing, which killed the decedent, occurred in Israel. *See id.* Consequently, the Restatement factors indicate that Israel has the most significant relationship to the plaintiffs' claims. *See id.*; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

Furthermore, like the plaintiff in *Oveissi* and unlike the plaintiffs in *Dammarell*, the plaintiffs in this case have presented no evidence that the terrorist attack was targeted specifically at U.S. nationals or was otherwise intended to affect the United States. *See generally* Pls.' Mot. To the contrary, it appears that the terrorist attack was targeted at Israel, which, like all nations, "has a strong governmental interest in both deterring attacks within its sovereign borders and ensuring compensation for injuries to its domiciliaries." *Oveissi*, 573 F.3d at 842. California's interest is slight by comparison because it arises only out of the fact that the decedent and two of the plaintiffs were born there and the fact that the decedent and the plaintiffs briefly resided there. *See id.* at 843. Although the United States has a "strong interest in applying its domestic law to terrorist attacks on its nationals," the court concludes that in the absence of any suggestion that the terrorist attack was targeted at the United States, Israel's governmental interest outweighs that of California. *Id.*

Thus, Israel has the most significant relationship to the suicide bombing and also has the strongest governmental interest in applying its law. *See id.* at 842-43. Accordingly, the D.C.

---

[7]   The Circuit noted that, "although choice-of-law rules can point to different sources of substantive law for different claims," the plaintiff's claims of wrongful death and IIED were "closely related" and, therefore, French law applied to both claims. *Oveissi*, 573 F.3d at 843 n.4 (citing *Logan v. Providence Hosp., Inc.* 778 A.2d 275, 280 (D.C. 2001)).

choice of law rules require the court to apply Israeli law to the plaintiffs' claims.[8]  *See id.*; *see also Wachsman ex rel. Wachsman v. Islamic Republic of Iran*, 537 F. Supp. 2d. 85, 95-96 (D.D.C. 2008) (applying Israeli law to the plaintiffs' wrongful death claim because "with respect to wrongful death claims, Israel has a unique interest" in applying its law and the decedent "suffered injury and death in Israel and . . . was domiciled [in Israel] at the time of his death").

Although the plaintiffs' motion acknowledges the possibility that Israeli law may apply, it fails to establish their entitlement to a judgment in their favor under Israeli law.  *See generally* Pls.' Mot.  For example, the plaintiffs evaluate their IIED claim solely under California law without mentioning Israeli law concerning IIED.  *See* Pls.' Mot. at 18-22.  Likewise, although the plaintiffs have established that the victim survived for approximately four hours after the infliction of her injuries in the terrorist attack, *see id.* at 15-17, they have not established the defendants' underlying tort liability for assault, battery and IIED under Israeli law as required to succeed on their survival claim, *see id.* at 14-18.  The plaintiffs also evaluate their wrongful

---

[8]   The plaintiffs do not suggest that applying Israeli law would "conflict with a strong public policy" of California.  *See* Pls.' Mot. at 8, 10; *see also Oveissi*, 573 F.3d at 842 n.3 (observing that there was no contention that the application of French law would conflict with a strong public policy of the District of Columbia).

11

death[9] claim solely under California law. *See id*. at 14. Similarly, the plaintiffs fail to establish vicarious liability under Israeli law, as they rely on the *Campuzano* conclusions of law, which found vicarious liability under D.C. law only. *See id.* at 13. Furthermore, the plaintiffs have failed to establish that their calculation of damages comports with Israeli law. *See id.* at 22-26.

Therefore, the court denies without prejudice the plaintiffs' renewed motion for default judgment. The court grants the plaintiffs leave to submit additional briefing demonstrating their entitlement to a judgment in their favor under Israeli law.[10]

---

[9] The court notes that the plaintiffs cite the same Israeli statute for both their wrongful death claim and their survival claim. *See* Pls.' Mot. at 9, 11. That statute, the Israel Tort Ordinance (New Version) § 78, provides that

> [w]here the death of any person is caused by any civil wrong and such person would, if death had not ensued, have been entitled at the time of his death under the provisions of this Ordinance to compensation in respect of bodily injury caused to him by such civil wrong, the spouse, parent and child of such deceased person will be entitled to compensation from the person responsible for such civil wrong.

*Id.* The plain language of the statute appears to authorize claims for survival rather than wrongful death. *See Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 575 n.2 (1974) (observing that "[s]urvival statutes permit the deceased's estate to prosecute any claims for personal injury the deceased would have had, but for his death" but "do not permit recovery for harms suffered by the deceased's family as a result of his death" as wrongful death statutes do), *superseded on other grounds by statute as recognized in Miles v. Apex Marine Corp.*, 498 U.S. 19, 30 n.1 (1990). Yet, as the court has previously noted, there is some authority to suggest that this statute may also authorize wrongful death claims. *See Wachsman ex rel. Wachsman v. Islamic Republic of Iran*, 603 F. Supp. 2d 148, 159-60 (D.D.C. 2009) (citing CA 140/00 *Ettinger v. Co. for the Reconstruction & Dev. of the Jewish Quarter* [2004]). The court expects the plaintiffs to address this matter in any renewed motion for default judgment.

[10] The plaintiffs should take note of Federal Rule of Civil Procedure 44.1, which states that "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." FED. R. CIV. P. 44.1; *see also* 9A FED. PRAC. & PROC. §§ 2441-2447.

## IV.  CONCLUSION

For the reasons set forth above, the court denies without prejudice the plaintiffs' renewed motion for default judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of February, 2010.

                                                                RICARDO M. URBINA
                                                                United States District Judge